EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

MARK A. INCIONG  CA BAR #163443
Assistant United States Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, HI 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: mark.inciong@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00248 JMS |
| | ) | |
| Plaintiff, | ) | UNITED STATES' MOTIONS |
| | ) | IN LIMINE TO: |
| v. | ) | |
| | ) | |
| ROBERT ALEXANDER SIGOUIN,(2) | ) | (1) LIMIT DEFENDANTS' COMMENTS |
| KEVIN PATRICK CASH,     (3) | ) |     IN OPENING STATEMENT TO |
| | ) |     THOSE WHICH WILL BE PROVEN |
| Defendants. | ) |     AT TRIAL; |
| | ) | (2) PRECLUDE OR LIMIT THE |
| | ) |     TESTIMONY OF DEFENSE |
| | ) |     WITNESSES WHO HAVE NO |
| | ) |     PERSONAL KNOWLEDGE OF ANY |
| | ) |     RELEVANT EVIDENCE; |
| | ) | (3) PRECLUDE IMPROPER CLOSING |
| | ) |     ARGUMENT ON PENALTY OR |
| | ) |     SYMPATHY; AND |
| | ) | (4) ADMIT EXPERT TESTIMONY |
| | ) | |
| | ) | CERTIFICATE OF SERVICE |
| | ) | |
| | ) | TRIAL DATE: April 25, 2006 |
| | ) | TIME: 9:00 a.m. |
| | ) | JUDGE: Hon. J. Michael |
| | ) |        Seabright |

**UNITED STATES' MOTIONS IN LIMINE**

COMES NOW the United States of America, by and through Edward H. Kubo, Jr., United States Attorney, and Mark A. Inciong, Assistant United States Attorney, and hereby files its motions in limine to be heard prior to trial in the above-referenced matter. Said motions are based upon the files and records of this case, together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

Defendants ROBERT ALEXANDER SIGOUIN and KEVIN PATRICK CASH are presently charged in a Fourth Superseding Indictment with Conspiracy to Distribute 100 grams or more of Heroin, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), Attempted Possession of Heroin, with Intent to Distribute, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), Unlawful User of a Controlled Substance in Possession of a Firearm and Ammunition, in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(2)(CASH); Possession of Heroin, with Intent to Distribute, within 1000 feet of an elementary school, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B) and 860 (CASH); Alien in Possession of Ammunition, in violation of Title 18, United States Code, Sections 922(g)(5)(A) and 924(a)(2)(SIGOUIN); and Forfeiture pursuant to Title 21, United States Code, Section 853 (SIGOUIN).

II

**STATEMENT OF FACTS**

On May 29, 2005, Virginia Rosas Guerrero was arrested at the Honolulu International Airport after arriving in Hawaii from Los Angeles on American Trans Air flight #4755.  At the time of her arrest, Guerrero was found to be in possession of approximately 295 grams of heroin which she had concealed in her crotch area.

Guerrero was advised of her <u>Miranda</u> rights in the Spanish language which she voluntarily waived in writing.  Guerrero agreed to provide a statement to federal agents and further agreed to cooperate with law enforcement.  Guerrero admitted she had made several trips to Hawaii for the purpose of transporting heroin from Mexico to Hawaii.  Guerrero indicated she delivered heroin to Defendant Kevin Patrick Cash approximately six to eight times in exchange for United States currency.

Guerrero stated that her most recent trip was on May 21, 2005, when she flew to Honolulu from Los Angeles carrying an amount of heroin.  After her arrival in Honolulu, she was instructed by a woman in Mexico, via cellular telephone, to meet Defendant Cash at the Ala Moana Shopping Center.  While waiting outside of Sears near Old Navy, Cash arrived at the mall in his truck and picked up Guerrero and took her to her hotel.  At the hotel, Cash exchanged $3500 with Guerrero for heroin.

Guerrero continued to indicate she wished to cooperate and agreed to participate in a controlled delivery of heroin to both SIGOUIN and CASH.  On May 29, 2005, Guerrero placed recorded

consensual telephone calls to the source of the heroin in Mexico who, in turn, contacted GUERRERO and CASH and arranged meetings between SIGOUIN and Guerrero at the Ohana Maile Sky Court Hotel in Waikiki and for CASH and Guerrero at Ala Moana Shopping Center.

At approximately 4:30 p.m., Guerrero telephoned the source in Mexico who told her that "Bob" would meet her in the lobby of the Ohana Maile Sky Court Hotel at 5:15 p.m. to pick up the heroin and would return later that night with the money.  At approximately 5:12 p.m. Guerrero was escorted to the hotel lobby by federal agents where they immediately observed Defendant Sigouin sitting on a bench near the elevators.  Guerrero stated, "It's hot" in Spanish which was the prearranged alert signal she was to give when she saw Siguoin.  Siguoin entered the elevator followed by federal agents as he disembarked on the hotel's 11th floor.  A search of Sigouin's person, incident to arrest, revealed a small amount of heroin, drug paraphernalia and unknown pills.

At approximately 5:40 p.m. on May 29, 2005, Defendant CASH was observed by surveillance units arriving in his truck at Ala Moana.  Federal agents made contact with Cash, placed him under arrest and searched his person and vehicle incident to arrest. During the searches, small amounts of heroin and methamphetamine as well as $200 in cash was found on Cash's person.  An additional $2000 was found in an envelope in Cash's vehicle.

Cash voluntarily waived his Miranda rights in writing and admitted to agents that had gone to Ala Moana Shopping center to "pick up two pieces" (i.e., buy approximately 50-56 grams of heroin). Cash advised that he had previously purchased heroin from Guerrero six or seven times and that he paid $1000 an ounce for the heroin. Cash also stated he had just purchased $3500 worth of heroin from Guerrero a week earlier.

Cash voluntarily consented to a search of his Kailua residence and advised agents that he kept a .357 magnum revolver, which he had illegally purchased in the street, at his apartment. Prior to conducting the search, Cash was allowed to speak with his wife with whom he resided. Cash's wife also consented to the search after speaking with federal agents.

While the apartment was searched, Cash told agents he had been using heroin for the past ten years and uses about one gram per day. He admitted he started selling heroin about five years ago in order to pay for his addiction. Cash stated he purchases the heroin for about $80 per gram and sells it for $140 per gram.

The search of Cash's residence yielded a Ruger Blackhawk .357 revolver found in a black leather jacket in Cash's bedroom closet as well as four other firearms: a Ruger .22 revolver, also found in the black leather jacket, a Winchester Model 72 .22 rifle and a Winchester Model 190 .22 rifle, both found in the bedroom closet. Also discovered in the closet were approximately 200 rounds of .22 caliber, .25 caliber and 10mm ammunition. In addition to the weapons and ammunition, agents seized small

quantities of heroin, drug paraphernalia such as pipes and balloons and a list of phone numbers.

On June 3, 2005, federal agents executed a search warrant for a Sigouin's room as his residence at 6157 Makaniolu Place, Honolulu.  During the search, agents discovered $26,790 in cash, amounts of heroin, methamphetamine and marijuana as well as drug paraphernalia and ammunition.  During the execution of the search warrant, Sigouin's wife, Wendie, advised agents that Sigouin was a Canadian citizen who had not worked in the last ten years.  She also admitted Sigouin was a heroin user and had discovered what she believed to be drugs and paraphernalia in his room.  She further explained that Sigouin had placed a lock on his door about one year ago so that no one else could enter and that he had the only key.  Wendie Sigouin provided to agents Sigouin's birth certificate, Canadian passport, Canadian social insurance card, Ontario health card and a Canadian driver's license.

**III**

**POINTS AND AUTHORITIES**

A.   THE COURT SHOULD LIMIT DEFENDANTS' OPENING STATEMENTS TO MATTERS THAT WILL BE PROVEN BY ADMISSIBLE EVIDENCE.

The United States anticipates that, at trial, the Defendants will offer the defense that they were "set up" and "entrapped" into conspiring to distribute and possess, with intent to distribute, heroin.  The United States requests that this Court caution the defense against commenting on and presenting this defense in its opening statement unless it has

<u>admissible</u> evidence to present at trial in support of such a defense.

In <u>United States v. Dinitz</u>, 424 U.S. 600, 96 S.Ct. 1075 (1976), Chief Justice Burger wrote:

> "An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument. To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict." <u>Dinitz</u>, 424 U.S. at 612, 96 S.Ct. At 1082.

Here, although the Defendant Sigouin will be acting as his own attorney, the mandate of <u>Dinitz</u> is no less applicable. Defendant will be under all the same constraints, rules and obligations as if he were a licensed attorney. While there is no doubt that Defendant has an absolute right to choose not to testify at trial, that right cannot be used as a shield behind which neither Defendant nor defense counsel he can hide from the responsibility to only comment in opening statement on admissible evidence that will be introduced at trial.

The United States Supreme Court was so concerned with that danger that in <u>Arizona v. George Washington, Jr.</u>, 434 U.S. 497, 98 S.Ct. 824 (1978), it announced that should such improper remarks be made by defense counsel, the trial judge has the power and right to declare a mistrial without the consent of the

7

defense.  Further, any subsequent retrials are not barred by double jeopardy.

While the primary focus in <u>Arizona v. George Washington, Jr.</u> was whether the trial court had made the requisite finding of "manifest necessity" in declaring the mistrial in order to bar double jeopardy, a substantial portion of the opinion discusses the rationale behind why a mistrial is appropriate to remedy the perils created when defense counsel makes unsubstantiated remarks in opening statement.  <u>Arizona v. George Washington, Jr.</u>, 434 U.S. 510-514, 98 S.Ct. 832-835.

"An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal.  Indeed, such statements create a risk, often not present in the individual juror bias situation that the entire panel may be tainted.  The trial judge, of course, may instruct the jury to disregard the improper comment.  In extreme cases, he may discipline counsel, or even remove him from the trial as he did in <u>United States v. Dinitz</u>, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267.  Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument.  Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases."  <u>Arizona v. George Washington, Jr.</u>, 434 U.S. at 512-513, 98 S.Ct. at 834.

The Ninth Circuit has followed this edict from the highest court stating, "Opening argument, like closing, should not refer

to matters that are not to be presented as evidence." <u>United States v. Taren-Palma</u>, 997 F.2d 525, 532 (9th Cir. 1993).

Based on the above case law, the United States respectfully requests this Court to enter an order directing the Defendants, in making their opening statements, to comment only on those matters which will be proven by admissible evidence at trial. Should either Defendant or defense counsel disobey that order, the United States will request that this Court to sanction defense counsel and/or disallow Defendant from further self-representation and to immediately order Defendant's standby counsel to step in and represent Defendant for the remainder of the trial.  If the violation relates to a significant element of the case, the United States will request the Court to declare a mistrial after making a specific finding that the mistrial is a manifest necessity.  Similarly, the United States also respectfully requests that this Court admonish both Defendants from arguing facts not in evidence in closing argument.

    B.   <u>DEFENDANTS SHOULD BE PRECLUDED FROM CALLING WITNESSES TO TESTIFY ON MATTERS WHICH THEY HAVE NO PERSONAL KNOWLEDGE</u>

The United States also anticipates the possibility that defense witnesses may be called to testify regarding irrelevant matters or aspects of the case in which they have no firsthand knowledge allowing Defendants to "testify" without taking the stand.

Rule 801 of the Federal Rules of Evidence states, "Hearsay is a statement, other than one made by the declarant while

testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Clearly, attempting to elicit testimony from defense witnesses as to the state of mind or knowledge of the Defendants is improper and the United States respectfully requests a pretrial order directing the Defendant not to attempt these tactics at trial.

For this reason, the United States requests the Court to order Defendants to refrain from such questioning at trial. Should it appear either Defendant is drawing near to eliciting testimony which lacks foundation and would, thus, be hearsay, the United States requests the opportunity to voir dire the witness, outside the presence of the jury, to prevent the jury from being tainted by hearing inadmissible testimony. Similarly, if the either Defendant himself chooses to testify and attempts to introduce hearsay or other inadmissible evidence, the United States would request an identical order prohibiting Defendants from attempting to testify to inadmissible evidence.

 C. <u>DEFENDANT SHOULD BE PRECLUDED FROM MAKING ANY REFERENCES TO PENALTY OR SYMPATHY AT TRIAL OR IN CLOSING ARGUMENT</u>.

References to the Defendants' age, physical condition, health issues, life expectancy, the possibility of facing "life", "mandatory life", "prison," or other references to penalty and as well as any other attempts to appeal to the jury's sense of sympathy and pity in closing argument are improper and impermissible and the United States requests this Court to enter a pretrial order forbidding Defendants and defense counsel from

raising this issue in closing argument or any other point in the trial.

The inappropriateness of either Defendant attempting to appeal to a jury's sympathy by presenting information of possible punishment is a fundamental tenet of trial practice at any level. Not only is the principle that jurors are not to consider penalty canonized in the Ninth Circuit Manual of Model Criminal Jury Instructions at §7.3, the comment to that model instruction even goes on to state that instructing jurors that they are not to consider penalty is ordinarily inappropriate unless jurors have received information about the possible punishment.  <u>Ninth Circuit Manual of Mode Criminal Jury Instructions</u>, §7.3 (1997 Edition - West Publishing Co.)

More importantly, the United States Supreme Court, in a case arising out a habeas corpus action from the Ninth Circuit Court of Appeals, upheld the state trial court's finding of summary contempt of defense counsel for raising possible punishment before the jury.  <u>Pounders v. Watson</u>, 521 U.S. 982, 117 S.Ct. 2359, 138 L.Ed.2d 976 (1997).  There, despite the court's statement that possible punishment "is not a subject that's open for discussion," defense counsel elicited the penalty the defendant was facing during her direct examination of him. <u>Pounders</u>, 117 S.Ct. at 2360.  The court then found her in contempt for the violation, stating, "I think she has permanently prejudiced this jury in favor of her client," <u>Pounders</u>, at 2361,

11

and the Supreme Court affirmed the court's finding of contempt. Pounders, at 2363.

Clearly, such arguments worthy of findings of contempt subsequently endorsed by the Supreme Court have no place at trial in the instant matter and the United States respectfully requests this Court to enter an appropriate pretrial order.

    D.    EXPERT DRUG TESTIMONY SHOULD BE ADMITTED.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed.R.Evid. 702. The trial court has broad discretion to admit expert testimony. See, e.g., United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995). An expert may base his opinion on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed.R.Evid. 703. In addition, an expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier-of-fact. Fed.R.Evid. 704.

        1.    Value of the Heroin

The United States intends to present expert testimony about the quantity, wholesale value, and street value of the heroin seized in this case. The quantity and value of the heroin circumstantially demonstrates the Defendants knowledge and involvement in the conspiracy, and that the Defendants attempted to possess the heroin with the intent to distribute it.

Knowledge and intent are elements of the offenses charged in this case.

The Ninth Circuit permits the use of such expert testimony. In <u>United States v. Ogbuehi</u>, 18 F.3d 807, 812 (9th Cir. 1994), for instance, the Defendant was charged with the importation of heroin after he and others attempted to smuggle approximately 2.5 pounds of heroin across the border.  At trial, the Government introduced the expert testimony of a DEA agent as to the street value of the heroin, assuming it had been cut repeatedly and sold on the street.  The Ninth Circuit held that agents can testify to the street value of narcotics and that counsel can argue reasonable inferences from such testimony.  <u>See also</u> <u>United States v. Savinovich</u>, 845 F.2d 834, 838 (9th Cir. 1988) (price, quantity, and quality of narcotics is relevant to defendant's intent to distribute).

        2.    The Court Should Permit the Forensic Chemist's Testimony as to the Findings from the Testing of the Contraband

The United States will seek to have forensic chemist Alan Randa from the Drug Enforcement Administration testify as to the identity of the substance seized in this case.  The United States expects the chemists to testify that laboratory examination confirmed that the contraband is heroin.  This testimony is permitted under Rule 702 of the Federal Rules of Procedure, which allows witnesses qualified as experts to testify as to scientific or technical knowledge that "will assist the trier of fact to understand the evidence."

Accordingly, the United States respectfully requests this Court to allow expert testimony which explains the above.

## IV.

## CONCLUSION

Based on all of the above, the United States respectfully requests that its motions in limine be granted.

DATED:  April 11, 2006, at Honolulu, Hawaii.

                EDWARD H. KUBO, JR.
                United States Attorney

        By  /s/ Mark A. Inciong
            MARK A. INCIONG
            Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served by First Class Mail:

| | |
|---|---|
| MARY ANN BARNARD, ESQ.<br>P. O. Box 235520<br>Honolulu, Hawaii 96813<br>Attorney for Defendant<br>KEVIN PATRICK CASH | April 11, 2006 |
| ROBERT ALEXANDER SIGOUIN<br>Federal Detention Center<br>P. O. Box 30080<br>Honolulu, HI 96820<br>Defendant PRO SE | April 11, 2006 |

Served Electronically through CM/ECF:

| | |
|---|---|
| GLENN D. CHOY, ESQ.<br>choyhawaii@hawaiiantel.net | April 11, 2006 |

DATED:  Honolulu, Hawaii, April 11, 2006.

/s/ M. Derby-Taufa'asau