EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

MARK A. INCIONG  CA BAR #163443
Assistant United States Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, HI 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: mark.inciong@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00248 JMS |
| | ) | |
| Plaintiff, | ) | UNITED STATES' RESPONSE AND |
| | ) | OPPOSITION TO DEFENDANT |
| vs. | ) | CASH'S MOTION IN LIMINE NO. 1; |
| | ) | CERTIFICATE OF SERVICE |
| | ) | |
| KEVIN PATRICK CASH,    (3) | ) | |
| | ) | |
| Defendant. | ) | TRIAL DATE: April 25, 2006 |
| | ) | TIME: 9:00 a.m. |
| | ) | JUDGE: Hon. J. Michael |
| | ) | Seabright |
| | ) | |

**UNITED STATES' RESPONSE AND OPPOSITION
TO DEFENDANT CASH'S MOTION IN LIMINE NO. 1**

COMES NOW the United States of America, by and through Edward H. Kubo, Jr., United States Attorney, and Mark A. Inciong, Assistant United States Attorney, and hereby files its responses to Defendant Cash's motions in limine to be heard prior

to trial in the above-referenced matter.  Said responses are based upon the files and records of this case, together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

Defendants ROBERT ALEXANDER SIGOUIN and KEVIN PATRICK CASH are presently charged in a Fourth Superseding Indictment with Conspiracy to Distribute 100 grams or more of Heroin, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), Attempted Possession of Heroin, with Intent to Distribute, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), Unlawful User of a Controlled Substance in Possession of a Firearm and Ammunition, in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(2)(CASH); Possession of Heroin, with Intent to Distribute, within 1000 feet of an elementary school, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B) and 860 (CASH);  Alien in Possession of Ammunition, in violation of Title 18, United States Code, Sections 922(g)(5)(A) and 924(a)(2)(SIGOUIN); and Forfeiture pursuant to Title 21, United States Code, Section 853 (SIGOUIN).

II

**STATEMENT OF FACTS**

On May 29, 2005, Virginia Rosas Guerrero was arrested at the Honolulu International Airport after arriving in Hawaii from Los Angeles on American Trans Air flight #4755. At the time of her arrest, Guerrero was found to be in possession of approximately 295 grams of heroin which she had concealed in her crotch area.

Guerrero was advised of her <u>Miranda</u> rights in the Spanish language which she voluntarily waived in writing. Guerrero agreed to provide a statement to federal agents and further agreed to cooperate with law enforcement. Guerrero admitted she had made several trips to Hawaii for the purpose of transporting heroin from Mexico to Hawaii. Guerrero indicated she delivered heroin to Defendant Kevin Patrick Cash approximately six to eight times in exchange for United States currency.

Guerrero stated that her most recent trip was on May 21, 2005, when she flew to Honolulu from Los Angeles carrying an amount of heroin. After her arrival in Honolulu, she was instructed by a woman in Mexico, via cellular telephone, to meet Defendant Cash at the Ala Moana Shopping Center. While waiting outside of Sears near Old Navy, Cash arrived at the mall in his truck and picked up Guerrero and took her to her hotel. At the hotel, Cash exchanged $3500 with Guerrero for heroin.

Guerrero continued to indicate she wished to cooperate and agreed to participate in a controlled delivery of heroin to both SIGOUIN and CASH. On May 29, 2005, Guerrero placed recorded consensual telephone calls to the source of the heroin in Mexico who, in turn, contacted GUERRERO and CASH and arranged meetings between SIGOUIN and Guerrero at the Ohana Maile Sky Court Hotel in Waikiki and for CASH and Guerrero at Ala Moana Shopping Center.

At approximately 4:30 p.m., Guerrero telephoned the source in Mexico who told her that "Bob" would meet her in the lobby of the Ohana Maile Sky Court Hotel at 5:15 p.m. to pick up the heroin and would return later that night with the money. At approximately 5:12 p.m. Guerrero was escorted to the hotel lobby by federal agents where they immediately observed Defendant Sigouin sitting on a bench near the elevators. Guerrero stated, "It's hot" in Spanish which was the prearranged alert signal she was to give when she saw Siguoin. Siguoin entered the elevator followed by federal agents as he disembarked on the hotel's 11th floor. A search of Sigouin's person, incident to arrest, revealed a small amount of heroin, drug paraphernalia and unknown pills.

At approximately 5:40 p.m. on May 29, 2005, Defendant CASH was observed by surveillance units arriving in his truck at Ala Moana. Federal agents made contact with Cash, placed him under

arrest and searched his person and vehicle incident to arrest. During the searches, small amounts of heroin and methamphetamine as well as $200 in cash was found on Cash's person. An additional $2000 was found in an envelope in Cash's vehicle.

Cash voluntarily waived his <u>Miranda</u> rights in writing and admitted to agents that had gone to Ala Moana Shopping center to "pick up two pieces" (i.e., buy approximately 50-56 grams of heroin). Cash advised that he had previously purchased heroin from Guerrero six or seven times and that he paid $1000 an ounce for the heroin. Cash also stated he had just purchased $3500 worth of heroin from Guerrero a week earlier.

Cash voluntarily consented to a search of his Kailua residence and advised agents that he kept a .357 magnum revolver, which he had illegally purchased in the street, at his apartment. Prior to conducting the search, Cash was allowed to speak with his wife with whom he resided. Cash's wife also consented to the search after speaking with federal agents.

While the apartment was searched, Cash told agents he had been using heroin for the past ten years and uses about one gram per day. He admitted he started selling heroin about five yearsago in order to pay for his addiction. Cash stated he purchases the heroin for about $80 per gram and sells it for $140 per gram.    The search of Cash's residence yielded a Ruger Blackhawk .357 revolver found in a black leather jacket in Cash's

bedroom closet as well as four other firearms: a Ruger .22 revolver, also found in the black leather jacket, a Winchester Model 72 .22 rifle and a Winchester Model 190 .22 rifle, both found in the bedroom closet. Also discovered in the closet were approximately 200 rounds of .22 caliber, .25 caliber and 10mm ammunition. In addition to the weapons and ammunition, agents seized small quantities of heroin, drug paraphernalia such as pipes and balloons and a list of phone numbers.

On June 3, 2005, federal agents executed a search warrant for a Sigouin's room as his residence at 6157 Makaniolu Place, Honolulu. During the search, agents discovered $26,790 in cash, amounts of heroin, methamphetamine and marijuana as well as drug paraphernalia and ammunition. During the execution of the search warrant, Sigouin's wife, Wendie, advised agents that Sigouin was a Canadian citizen who had not worked in the last ten years. She also admitted Sigouin was a heroin user and had discovered what she believed to be drugs and paraphernalia in his room. She further explained that Sigouin had placed a lock on his door about one year ago so that no one else could enter and that he had the only key. Wendie Sigouin provided to agents Sigouin's birth certificate, Canadian passport, Canadian social insurance card, Ontario health card and a Canadian driver's license.

## III

## **POINTS AND AUTHORITIES**

    A.    DEFENDANT'S MOTION IN LIMINE #1

        1.    Jury Selection, Opening/Closing Recorded.

The United States has no objection.

        2.    Exclusion of Witnesses.

The United States has no objection.

        3.    Offers of Proof.

The United States has no objection.

        4.    Exclusion of Evidence

The United States has no intention of introducing prior "bad act" evidence, irrelevant evidence, overly prejudicial evidence or to impeach the Defendant with a prior felony conviction pursuant to Rule 609.  However, in regard to subparagraph (b), the United Stated does intent to elicit Defendant's admission that he had illegally purchased the .357 magnum revolver seized from his apartment.  This will be elicited not as a prior "bad act", but rather to show the Defendant's mens rea that he was prohibited to possess a firearm.  Should the Defendant testify and deny that knowledge, the United States will then seek to introduce his prior felony conviction as proof of Defendant's knowledge that he was a prohibited possessor.

Likewise, the United States is well aware of it obligation not to introduce hearsay testimony and has no intention of

attempting to admit such evidence. However, the prosecution will seek to introduce non-hearsay evidence at trial pursuant to Federal Rule of Evidence 801(d)(2)(E). As required, each of those statements will be shown to have been made by a co-conspirator during the course of and in furtherance of the conspiracy. If, during trial, the Defendant believes sufficient foundation has not been made to establish the co-conspirator statement as non-hearsay, he may object at that time.

Additionally, in regard to subparagraph (d), "tipster" information introduced to show not the truth of the matter assert, but as to what the investigating agents relied upon in conducting their investigation is not hearsay. Likewise, statements introduced by an agent who interpreted a Defendant's post-Miranda statements are not hearsay. An interpreter who relates statements from a defendant can be treated as an agent of that defendant, thereby rendering a third party's testimony concerning the interpreter's statements nonhearsay under Rule 801(d)(2) of the Federal Rules of Evidence. United States v. Nazemian, 948 F.2d 522, 526 (9th Cir. 1990). Other circuits, following Nazemian, have expressed the view that "[e]xcept in unusual circumstances, an interpreter is 'no more than a language conduit and therefore his translation [does] not create and additional level of hearsay.'" United States v. Cordero, 18 F.3d 1248, 1253 (5th Cir. 1994)(permitting testimony of English-speaking agent relying on translation by a person standing in

defendant's house during arrangement of drug deal), quoting United States v. Lopez, 937 F.2d 716, 724 (2d Cir. 1991); see also 4 J. Weinstein & M. Berger, Evidence ¶ 801(d)(2)© [01] at 801-217, n. 34 (1988)(describing "presumption of agency" that attaches to interpreters, assuming a lack of a motive to misrepresent and sufficient capacity).

The United States was advised of his Miranda rights and made several admissions. Thus, the United States will introduce the post-Miranda statements of Defendant Cash and will establish that the statements were made voluntarily and within the requirement of Title 18, U.S.C. Section 3501. The United States has not utilized, or attempted to utilize, any lie detector tests and will not make reference to such at trial.

    5.   Prior Record and Mug Shots

Except as indicated above, the United States has no intention of introducing the Defendant's prior criminal record in its case in chief. Likewise, there is no intention to introduce the Defendant's "mug shot." However, the United States will seek to admit a photo line-up prepared including the Defendant's photo which was shown to a witness who then identified Defendant Cash.

    6.   Defendant's Statements Were Voluntary.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that custodial interrogation designed to elicit incriminating statements must be preceded by explicit procedural safeguards. For the Miranda requirements to apply, the suspect

9

must: (1) be in the custody of law enforcement officials; and (2) be subject to interrogation.

Defendant's post-arrest statements to agents are admissible because they were voluntarily given after defendant voluntarily and knowingly waived his Miranda rights.  Defendant has set forth no facts whatsoever raising a bona fide issue respecting the voluntariness of his statements or the validity of the Miranda warnings he was undeniably given.  Accordingly, there is no need for a hearing, and the United States respectfully requests that defendant's motion be denied based on the pleadings.  If the Court nonetheless requires a hearing, and Defendant raises contested factual issues, the United States would demonstrate that no Fifth Amendment violation occurred.  The United States would also establish the voluntariness of Defendant's statements by a preponderance of the evidence.  Leg. v. Twomey, 404 U.S. 477, 488-489 (1972).  A statement will be found to be voluntary if the totality of the surrounding circumstances indicates that it was the product of free and rational choice. Culombe v. Connecticut, 367 U.S. 568 (1961).  In examining the totality of the circumstances, the court is required to examine the personal characteristics of Defendant[1]/ together with the details of the interrogation.  Schneckloth v. Bustamonte, 41 F2d. U.S. 218,226

---

1 - Relevant personal characteristics include age, intelligence, educational level, knowledge of rights, and the Defendant's physical, mental, or emotional condition. See e.g., Brewer v. Williams, 430 U.S. 387, 403 (1977).

10

(1973). Here, the testimony would establish that Defendant was not subjected to coercive conduct such as physical intimidation, torture, or threats. Agents properly advised Defendant of his Miranda rights, and he then waived those rights and made a statement. The United States' conduct was entirely proper and Defendant's statements should be admitted at trial in the United States' case-in-chief.[2/]

7. Defendant's Right Not To Testify

The United States has no intention of commenting upon the Defendant's right to decline to testify in his own behalf should he choose to do so.

**IV**

**CONCLUSION**

As shown above, each of Defendant's motions is moot or should be denied. Accordingly, the United States respectfully requests that each of Defendant's motions be denied.

DATED: April 18, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney

By /s/ Mark A. Inciong
MARK A. INCIONG
Assistant U.S. Attorney

---

2 - Because defendant's statements were voluntary, even if the Government failed to comply with Miranda, the court should nevertheless allow his testimony to be used for impeachment should defendant testify at trial. "The shield provided by Miranda cannot be perverted into a license to use perjury by way of defense, free from the risk of confrontation with prior inconsistent utterances." Harris v. New York, 401 U.S. 222, 226 (1971).

11

CERTIFICATE OF SERVICE

    I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served by First Class Mail:

MARY ANN BARNARD, ESQ.                  April 18, 2006
P. O. Box 235520
Honolulu, HI 96823

DATED:  Honolulu, Hawaii, April 18, 2006.

                                      /s/ M. Derby-Taufa'asau